United States District Court
Middle District of Florida
Jacksonville Division

**PATSY LORIN GRIFFIS,**

 *Plaintiff,*

v.                  NO. 3:22-cv-800-PDB

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

# Order

 Patsy Griffis brings this action under 42 U.S.C. § 405(g) to review a final decision of the Acting Commissioner of Social Security denying her application for disability-insurance benefits. Doc. 1. Under review is a decision by an administrative law judge (ALJ) signed on December 14, 2021. Tr. 15–21. The procedural history, administrative record, and law are summarized in the ALJ's decision, Tr. 15–21, and the parties' briefs, Docs. 15, 18, and not repeated here except as necessary to understand the decision.

 Griffis argues the ALJ erred by failing to account for the "total limiting effects" of her impairments. Doc. 15 at 1. Within that argument, she argues the ALJ improperly evaluated an opinion by Dr. William Choisser, Doc. 15 at 9–17, and improperly evaluated her statements about her symptoms, Doc. 15 at 17–22. The Acting Commissioner argues there is no error. Doc. 18.

I.   Administrative Proceedings

Griffis applied for benefits in November 2020. Tr. 155–56. She alleged she was disabled as of April 30, 2020, from diabetes, neuropathy, and right carpal tunnel syndrome. Tr. 155, 173. The agency determined she was not disabled at the initial level, Tr. 43–48, and reconsideration level, Tr. 50–56. She requested a hearing before an ALJ. Tr. 80–81.

The ALJ conducted a hearing in November 2021, at which Griffis—who was represented by counsel—and a vocational expert testified. Tr. 25–41. The ALJ later issued the decision under review, proceeding through the five-step sequential process in 20 C.F.R. § 404.1520(a)(4), stopping at step four.

At step one, the ALJ found Griffis has not engaged in "substantial gainful activity" since April 30, 2020 (the alleged onset date). Tr. 17.

At step two, the ALJ found Griffis has severe impairments of obesity, diabetes mellitus, right carpel tunnel syndrome, right ankle tarsal tunnel syndrome, and right foot internal fixation of the Lisfranc joints. Tr. 17.

At step three, the ALJ found Griffis has no impairment or combination of impairments that meets or medically equals the severity of any impairment in the regulatory listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, including in sections 1.00 (musculoskeletal) and 9.00 (endocrine disorders). Tr. 17–18. The ALJ observed, "Though the listings do not address obesity, this has been considered when assessing the other listings and" her residual functional capacity (RFC). Tr. 18.

The ALJ found Griffis has the RFC to perform light work "except she can frequently handle and finger bilaterally; should avoid climbing ropes or scaffolds and crouching; and can occasionally kneel." Tr. 18 (emphasis omitted).

At step four, the ALJ found Griffis can perform her "past relevant work" as a claims adjudicator. Tr. 21. The ALJ therefore found no disability. Tr. 21.

Griffis asked the Appeals Council to review the ALJ's decision. Tr. 1. The Appeals Council "found no reason" under the rules to review the decision and therefore denied her request for review. Tr. 1.

## II. Standard of Review

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

### III. Law and Analysis

A claimant has the burden of proving she is disabled. 20 C.F.R. § 404.1512(a)(1). "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

A claimant's RFC is the most a claimant "can still do despite [her] limitations." *Id*. § 404.1545(a)(1). The agency assesses the RFC "based on all the relevant evidence in" the record. *Id*.

Griffis argues the ALJ erred by failing to account for the "total limiting effects" of her impairments. Doc. 15 at 1. The Acting Commissioner recasts Griffis's argument as an argument that the ALJ's RFC finding is not supported by substantial evidence. Doc. 18 at 1.

Contrary to Griffis's position, substantial evidence supports the ALJ's RFC finding. This evidence includes evidence that her diabetes was stable with medication other than insulin, her hypertension was stable with diet and medication, she showed normal gait and station, she had normal upper and lower extremity strength, she showed decreased spinal range of motion but no ongoing issues, her endocrinologist recommended dietary changes and exercise due to obesity, she possibly had bilateral tarsal tunnel syndrome because no structural change suggested neuropathy after orthopedic surgery on her right foot Lisfranc joints, she had moderate right carpel tunnel syndrome and early arthritis, and after right-hand surgery she reported some achiness in her palm

but resolution of the pain in her index finger and of the numbness and tingling. Tr. 226–28, 243, 245, 250, 257, 264, 282, 284, 286, 294, 296, 367, 379–80, 383.

Griffis argues the ALJ erred by improperly evaluating an opinion by Dr. Choisser. Doc. 15 at 9–17.

An ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ will consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* § 404.1520c(a) & (c)(1)–(5).

The most important factors are supportability and consistency, and the ALJ must explain how he considered them. *Id.* § 404.1520c(a), (b). For supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). For consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

An ALJ must consider all relevant record evidence. 20 C.F.R. §§ 404.1520(a)(3), 404.1520b. But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (cleaned up).

In October 2021, Dr. Choisser examined Griffis and diagnosed her with (1) adult-onset diabetes with fair control, (2) diabetic neuropathy in her hands and feet, (3) hypertension with good control, and (4) history of right-sided carpel tunnel syndrome. Tr. 427–31. He found she had full range of motion of her hips, knees, and ankles and that her range of motion in her upper extremities was also normal. Tr. 428. The ALJ observed:

> In October 2021, [Griffis] underwent an independent examination with Dr. Choisser at the request of her representative. His examination revealed abnormalities to include limited cervical rotation of 40 degrees in either direction with only 20 degree cervical extension and 30 degree cervical flexion. Her grip strength was reduced to 3/5 in the right hand and 4/5 in the left hand. Upper and lower extremity strength was 4/5 bilaterally. Her gait appeared normal, though her squat was limited to one half the distance to the floor.

Tr. 20.

Dr. Choisser opined Griffis's symptoms would often interfere with attention and concentration, she had manipulative limitations, she would need to take unscheduled breaks, she would need to walk around for five minutes every thirty minutes, she would need to elevate her legs for more than half of an eight-hour workday, she would need a job that permits shifting positions at will, she should rarely lift less than and never lift more than ten pounds, she can sit thirty minutes and stand fifteen minutes at one time for a total of two

6

hours each in an eight-hour workday, she can never climb ladders, and she likely will be absent from work four days a month. Tr. 427–31. The ALJ summarized Dr. Choisser's opinion:

> Dr. Choisser opined [Griffis] can sit 30 minutes and stand 15 minutes at one time for a total of 2 hours each in an 8 hour workday. He opined [she] must walk around for five minutes every 30 minutes and that she will need a job that permits shifting positions at will from sitting, standing, or walking. He further notes [she] will need to take unscheduled breaks of 5-10 minutes every hour and will need to elevate her legs greater than 50 percent of an 8 hour workday. Dr. Choisser opined [she] should rarely lift less than 10 pounds and never any more. He notes [she] can occasionally look down, turn her head, hold her head in static position, twist, stoop, bend, crouch, squat, and climb stairs but never climb ladders. He notes she can perform manipulative tasks 10-20 percent of the workday, will be absent four days per month, and would often have difficulty maintaining concentration, pace, and task persistence during an 8 hour workday due to pain.

Tr. 20.

The ALJ found Dr. Choisser's opinion unpersuasive on the ground that it is inconsistent with the "longitudinal medical evidence." Tr. 20. The ALJ explained:

> Dr. Choisser's opinions are not persuasive, as the treatment records show [Griffis] reported resolution of her right hand symptoms with the release and injection. Furthermore, [she] reported worsening of neuropathy, but she has had nothing more than conservative treatment with records showing minimal abnormalities of her physical examination findings. Dr. Choisser's opinions are based on a single examination of [Griffis] at her representative's request, and appear to be based largely on [Griffis's] subjective complaints and reported limitations. The longitudinal medical evidence does not reveal comparable abnormalities on examination or support the limitations opined by Dr. Choisser.

Tr. 20.

Consistent with the law, the ALJ evaluated Dr. Choisser's opinion for supportability and consistency. *See* Tr. 20. The ALJ explained the treatment records show Griffis reported resolution of her right-hand symptoms, had conservative treatment for neuropathy, and showed minimal abnormalities for neuropathy. Tr. 20. By summarizing Dr. Choisser's opinion, finding it unpersuasive on the ground the "longitudinal medical evidence does not reveal comparable abnormalities on examination or support the limitations opined by Dr. Choisser," and by explaining the objective findings of record and Griffis's course of treatment, the ALJ adequately explained the supportability and consistency of Dr. Choisser's opinion.

Griffis argues "the ALJ's statement that Dr. Choisser's opinion was not persuasive because of purported complete resolution of Plaintiff's right hand symptoms with the [carpel tunnel syndrome] release and right index finger injection is simply false." Doc. 15 at 13–14 (italics omitted). This argument is unpersuasive. As the ALJ summarized, Griffis underwent a right endoscopic carpal tunnel release and an injection in her right index finger in January 2021 to address numbness and tingling in her right arm and pain in her index finger. Tr. 19 (citing Tr. 379–80, 383–84). Ten days after the release and injection, Griffis reported resolution of the numbness and tingling in her right hand and resolution of the pain in her index finger with aching in her palm. Tr. 19–20 (citing Tr. 367). Upon examination, her wounds were well-healed, she had intact sensation throughout, and her motor function was normal. Tr. 19–20, 368. After discussing her symptoms and intervention options with her orthopedist, Griffis stated she would return as needed and follow a home therapy program, which included strength exercises, range of motion, and desensitization. Tr. 368. The ALJ's statement was not "simply false."

8

Griffis argues "the ALJ's statement that she had only conservative treatment and minimal abnormalities on physical examinations … is also false." Doc. 15 at 14–15. This argument is unpersuasive. While some treatment reports indicate her neuropathy was "variably controlled," the reports were due in part to diet and lack of regular exercise, and the reports were from visits with her primary care provider, not her endocrinologist. Tr. 401, 408. The ALJ correctly summarized how Griffis's treatment records regularly indicated that her diabetes and neuropathy symptoms were stable with medication and lifestyle changes. Tr. 19–20 (citing Tr. 227, 243–46, 250–53, 257–60, 264–66, 353–56, 393–94). The ALJ's statement was not "false."

Griffis asserts the ALJ's statement that Dr. Choisser's opinion "appears" to be "based largely" on her subjective complaints is speculative. Doc. 15 at 15–16. She argues that the record shows Dr. Choisser interviewed her, "performed a thorough examination that revealed abnormal findings which reasonably support the limitations he assessed and, more to the point, demonstrate that his opinion is based on objective exam findings that support her subjective complaints." Doc. 15 at 15. This argument is unpersuasive. Dr. Choisser does not state he reviewed treatment records, and his opinion appears substantially based on Griffis's reported limitations. *See generally* Tr. 427–31. As the Acting Commissioner observes, "Dr. Choisser's opinion, in large part, re-summarizes [Griffis]'s complaints about her pain by indicating, for example, that she can only walk two blocks, or that she would have difficulty maintaining concentration, persistence, and pace because of her reported pain[.]" Doc. 18 at 7; *see* Tr. 427, 431. The ALJ reasonably interpreted Dr. Choisser's report.

Griffis argues the ALJ improperly relied on the fact that Dr. Choisser based his opinion on a single exam of Griffis "at her representative's request."

9

Doc. 15 at 16. To the contrary, the ALJ assessed Dr. Choisser's opinion based on whether it is consistent with, and supported by, the record. Although the ALJ observed that Dr. Choisser performed the examination at Griffis's representative's request, nothing suggests the observation affected the ALJ's assessment.

Griffis argues the ALJ improperly substituted his opinion for that of a medical expert. Doc. 15 at 16–17. This argument is unpersuasive. According to the record, providers other than Dr. Choisser who examined Griffis reported nothing remarkable with respect to her musculoskeletal or neurological systems other than some occasional tingling and some reduced spinal range of motion. Tr. 44, 227–28, 244, 251, 258, 265, 354, 393–94, 402, 409. As the ALJ noted, the providers recommended dietary changes and regular exercise. Tr. 19 (citing 353, 356, 393–94, 397, 401–02, 409–10). Furthermore, as the ALJ noted, Griffis's treating providers repeatedly indicated she had normal gait and station, normal muscle tone, normal strength, and normal coordination. Tr. 19 (citing 44, 51, 245, 252, 259, 266, 356). The ALJ therefore relied upon the record—not his own opinion—in finding Dr. Choisser's opinion unpersuasive.

Reversal and remand for reconsideration of Dr. Choisser's opinion is unwarranted.

Griffis also argues the ALJ improperly evaluated her statements about her symptoms. Doc. 15 at 17–22.

To determine disability, the agency considers a claimant's symptoms and the extent to which they "can reasonably be accepted as consistent with the

10

objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Statements about symptoms alone cannot establish disability. *Id.* § 404.1529(a), (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the … symptoms" and, when considered with the other evidence, would lead to a finding of disability. *Id.* § 404.1529(a), (b).

The finding that an impairment could reasonably be expected to produce the alleged symptoms does not involve a finding on the intensity, persistence, or functionally limiting effects of the symptoms. *Id.* § 404.1529(b). For that finding, the agency considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. *Id.* § 404.1529(a), (c). The agency then determines the extent to which the "alleged functional limitations and restrictions due to … symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the symptoms affect the ability to work. *Id.* § 404.1529(a).

The agency "will consider all of the evidence presented, including information about [the claimant's] prior work record, [her] statements about [her] symptoms, evidence submitted by [her] medical sources, and observations by [agency] employees and other persons." *Id.* § 404.1529(c)(3). Factors relevant to evaluating the claimant's symptoms include daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the symptoms; treatment for the symptoms other than medication; and measures used to relieve the symptoms. *Id.* § 404.1529(c)(3). The regulations do not require the agency to discuss every factor. *Perez v.*

11

*Comm'r of Soc. Sec.*, No. 5:21-cv-536-PRL, 2023 WL 2401308, at *6 (M.D. Fla. Mar. 8, 2023); *Stevens v. Comm'r of Soc. Sec.*, No. 3:21-cv-715-MRM, 2023 WL 1433441, at *10 (M.D. Fla. Feb. 1, 2023); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." (internal quotation marks omitted)).

To determine the extent to which the claimant's symptoms affect her capacity to perform basic work activities, the agency considers statements about the intensity, persistence, and limiting effects of the symptoms; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. 20 C.F.R. § 404.1529(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony about symptoms. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated finding about the claimant's symptoms if it is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Griffis testified she has neuropathy and pain in her hands and feet that prevent her from performing her job and medications make her drowsy and make concentrating difficult. Tr. 30–32. She alleged her pain limits her daily-living activities, including her ability to manipulate objects, walk long

12

distances, and sit or stand for prolonged periods. Tr. 180–83. She claimed she cannot pick up a gallon of milk, open a jar, or type for long periods. Tr. 31–32, 180–83. She claimed she has difficulty or is unable to garden, bake, cook, pick up children, or clean. Tr. 180–83. She claimed she needs to nap daily, rest after exerting herself, and elevate her legs for three hours a day. Tr. 31–33. She said she stumbles at times due to tingling and pain, has difficulty sleeping, and must rest and raise her feet after 30 minutes of activity. Tr. 33–35.

>The ALJ detailed Griffis's allegations:

> The claimant alleges pain in her hands and feet that interfere/prohibit prolonged standing and activities requiring the use of her hands, such as opening objects, typing, and grasping items. She has difficulty or is unable to garden, bake/cook, pick up children, clean, and walk long distances. (Exhibit 4E) The claimant testified she can no longer perform her past work reviewing Medicare claims, as she has neuropathy and pain in her hands and feet and her medications cause drowsiness and difficulty concentrating. She testified that she is not able to pick up a gallon of milk, open a jar, type on a keyboard for long periods of time, or sit and stand for long periods of time. She testified that she naps during the day for 30 minutes and sits in a recliner for 3 hours with her feet elevated 3 hours per day. She stumbles at times due to tingling and pain and has difficulty sleeping because of pain. She has to rest after performing an activity for 30 minutes.

Tr. 18–19. The ALJ found Griffis's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19.

>The ALJ summarized the evidence and explained:

>[T]he longitudinal objective findings and course of treatment do not indicate light exertional level activity is precluded. Given her right

> [carpel tunnel syndrome], the manipulative limitations on the right are persuasive, and the undersigned has limited her to no more than frequent handling and fingering bilaterally. This limitation is supported by treatment records showing resolution of her symptoms following her right carpal tunnel release and injection in her index finger joint. Given her diagnosis of diabetes and her use of Gabapentin, which she reported causes drowsiness, the undersigned finds she should avoid climbing ropes or scaffolds. Because she has neuropathy, she has limitations with crouching and kneeling.

Tr. 20.

The ALJ's finding is supported by substantial evidence. The ALJ reviewed the record and found Griffis is limited to light work. Tr. 18. The ALJ discussed treatment notes and Griffis's reported symptoms and highlighted the inconsistencies. Tr. 19–20. The ALJ considered the medical evidence and explained how Griffis's neuropathy, diabetes, and high blood pressure were stable with treatment and medication, and how surgery largely resolved her right-hand impairments. Griffis's examinations did not reveal remarkable musculoskeletal or neurological problems to support severe limitations in sitting, walking, standing, or lifting. In addition, the ALJ relied on the opinion evidence and prior administrative medical findings, including from state agency physicians Thomas Bixler, M.D., and Phillip Matar, M.D., who opined that Griffis could perform a range of light work. Tr. 20 (citing Tr. 43–48, 52–56). Finding these opinions undermined Griffis's subjective complaints and were partially persuasive, the ALJ incorporated limitations into Griffis's RFC. Tr. 19–21. He also partially credited Griffis's subjective complaints by limiting her to light work with additional limitations, including limitations caused by taking Gabapentin. Tr. 20–21.

Griffis argues the ALJ failed to adequately discuss the regulatory factors. Doc. 15 at 18–22. Specifically, Griffis argues the ALJ erred by failing

to discuss how he considered Griffis's daily activities, the location and intensity of her pain, the effects of her medication and self-treatment, statements about her pain from her spouse and from a friend, and her excellent work history. Doc. 15 at 18–22. This argument is unpersuasive. The ALJ explicitly discussed some factors and had no obligation to explicitly discuss all of them. The ALJ considered the entirety of the evidence, including Griffis's testimony about her activities of daily living, symptoms, and treatment. *See* Tr. 18–21. The ALJ summarized Griffis's medication and surgery. Tr. 18–20. The ALJ stated that he considered "all the evidence" and "all symptoms." Tr. 16, 18. The ALJ's discussion sufficed to show he applied the law.

Remand to reconsider Griffis's statements is unwarranted.

## IV. Conclusion

The Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Acting Commissioner and against Patsy Lorin Griffis and close the file.

**Ordered** in Jacksonville, Florida, on September 28, 2023.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*